IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JULIAN NGUYEN,
    Petitioner,

vs.                                    Case No.:  3:10cv107/RS/EMT

KENNETH S. TUCKER,[1]
    Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

      This cause is before the court on Petitioner's petition for writ of habeas corpus and supporting memorandum filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 13). Petitioner filed a reply (doc. 17).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 13).[2] Petitioner was indicted in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-5933, on one count of first degree murder with a firearm (Count I) and

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter McNeil, as Secretary for the Department of Corrections. Secretary Tucker is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 13). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

two counts of attempted first degree murder with a firearm (Counts 2, 3) (Ex. A). Petitioner entered a written plea agreement, pursuant to which he agreed to enter a "straight up" guilty plea to one count of second degree murder with a firearm and two counts of attempted second degree murder with a firearm (Ex. B). At a plea and sentencing hearing on April 23, 2008, the trial court accepted the plea (*id.*). On July 2, 2008, the court adjudicated Petitioner guilty and sentenced him to three concurrent terms of life imprisonment, with pre-sentence credit of one year and 222 days (Ex. C). Petitioner did not directly appeal the judgment of conviction and sentence.

On July 11, 2008, Petitioner filed a motion for reduction or modification of sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Exs. D, E). The state circuit court denied the motion on July 15, 2008 (*id.*).

On March 6, 2009, Petitioner filed a petition for belated appeal in the Florida First District Court of Appeal ("First DCA"), Case No. 1D09-1184 (Ex. F). The First DCA denied the petition per curiam on April 15, 2009 (Exs. G, PD-2). Nguyen v. State, 8 So.1137 322 (Fla. 1st DCA 2009) (Table).

On June 9, 2009, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. H at 1–11). The state circuit court summarily denied the motion on September 4, 2009 (*id.* at 29–36). Petitioner appealed the decision to the First DCA, Case No. 1D09-5261 (Ex. I). The First DCA affirmed the decision per curiam without written opinion on February 26, 2010, with the mandate issuing April 19, 2010 (Exs. K, N, PD-3). Nguyen v. State, 31 So. 3d 785 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on April 7, 2010 (doc. 1). Respondent concedes the petition is timely (doc. 13 at 3).

II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> 
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[3] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000). In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claims.

III. PETITIONER'S CLAIMS

A. Ground One: "Counsel was ineffective for advising [] Defendant that he would not receive more than 25.125 years if he made an open plea to the court."

In Ground One, Petitioner asserts defense counsel advised him he would receive only 25.125 years in prison if he entered an open plea to the court (doc. 1 at 4, supporting memorandum at 3–8).

He states after he entered the plea, he received life sentences on each count (*id.*). Petitioner asserts counsel failed to advise him that he could receive a life sentence on each count (supporting memorandum at 4). He contends if counsel had advised him of the punishment that could be imposed, he never would have entered an open plea (*id.*). Petitioner states he raised this claim in his Rule 3.850 motion (doc. 1 at 4).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 13 at 4–7).

1. Clearly Established Federal Law

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) applies. *See* Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). To obtain relief under Strickland, Petitioner must establish: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 688. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697; Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known

>unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill, 474 U.S. at 56–57 (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990). The Eleventh Circuit has commented that "[t]he right to competent plea bargain advice is at best a privilege that confers no certain benefit," because a defendant "may make a wise decision" without assistance of counsel or a "bad one despite superior advice from his lawyer." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between [entering a plea] and going to trial." *Id.* This requires counsel to "offer his informed opinion as to the best course to be followed" and impart "a general knowledge of the possible legal consequences of facing trial" to the defendant. *Id.* Therefore, a defendant's failure to "correctly assess every relevant factor entering into his decision" does not undermine a validly entered guilty plea. *Id.* at 1509.

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must establish that prove that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. Often this analysis hinges upon whether eradication of

the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). A conclusory, after-the-fact statement that Petitioner would not have pled guilty, without more, is insufficient to establish prejudice under Strickland. *See* Diaz, 930 F.2d at 835; *see also* Coulter v. Herring, 60 F.3d 1499, 1504 (11th Cir. 1995) (though Coulter evidenced, through his counteroffer to the state, a willingness to enter into a plea agreement, he offered no further proof to show that he would have accepted the state's plea offer of life without parole absent his lawyers' alleged errors; therefore, Coulter failed to establish any prejudice stemming from counsel's alleged deficient performance); Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

Finally, when a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).

        2.        Federal Review of State Court Decision

Petitioner raised this claims in Ground One of his Rule 3.850 motion (Ex. H at 6, 15–18). In the state circuit court's written decision, the court correctly identified the applicable legal standard as requiring Petitioner to demonstrate (1) counsel performed deficiently, and (2) the deficient performance prejudiced him, specifically, there is a reasonable probability that, but for counsel's errors, Petitioner would not have pleaded guilty and would have insisted on going to trial (*id.* at 31). The state circuit court adjudicated this particular claim as follows:

> As the Fourth District Court of Appeal has explained, "[a] plea conference is not a meaningless charade to be manipulated will-nilly after the fact; it is a formal ceremony, under oath, memorializing a crossroads in the case. What is said and done at a plea conference carries consequences. Scheele v. State, 953 So. 2d 782 (Fla. 4th DCA 2007). During the Defendant's plea conference, the court explicitly made the Defendant aware of the possible sentences he could receive. The court specifically informed the Defendant that the maximum sentence for each count was life. See

>   Attachment 2, at 4. Furthermore, the record conclusively shows that the Defendant's counsel made it perfectly clear that the minimum sentence the Defendant could receive would be 25.125 years and the maximum sentence the Defendant could receive would be life. Attachment 2, at 5. Afterwards, the Defendant indicated that he understood "all parameters of what [he was] facing, potentially, in this case." Attachment 2, at 6, 9.
>
>   In light of the clear record evidence that Defendant was specifically informed, on the record, by this court that he could be sentenced to life imprisonment on each count in this case and the Defendant's sworn response indicating that he understood the possible sentences he could receive, the Defendant cannot now claim that he entered the guilty pleas with the expectation that he could be sentenced to no more than 25.125 years in prison.

(Ex. H at 29–31).

Petitioner appealed the state circuit court's decision to the First DCA. The appellate court affirmed per curiam without written opinion. As previously discussed, when faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, 633 F.3d at 1287 (citing Harrington, 131 S. Ct. at 786). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, the state court's factual findings as to the specific information of which Petitioner was advised at the plea hearing and Petitioner's statements during that hearing are well supported by the record. The transcript of the plea hearing demonstrates the court advised Petitioner that if he pleaded guilty, he faced a statutory maximum sentence of life imprisonment on Count 1, and statutory maximum sentences of fifteen (15) years of imprisonment on Counts 2 and 3, but the

mandatory sentence the court was required to impose was twenty-five (25) years to life on each count (Ex. B at 4).  Defense counsel announced:

> MR. GRIFFITH [defense counsel]:  If I could, Judge.  In the plea negotiations, we agree that the minimum sentence you can impose is 25.1—
>
> THE COURT:  25—
>
> MR. GRIFFITH:  I'm sorry.  25—
>
> THE COURT:  25.125 years, a maximum of life.
>
> MR. GRIFFITH:  That's correct.  And that you can go the low end, the high end, or anywhere in between.
> . . . .
> MS. JENSEN [the prosecutor]:  And that that 25 years is minimum mandatory.
>
> MR. GRIFFITH:  That's correct.
>
> THE COURT:  Okay.  That 25 of those 25.125 is minimum mandatory.

(Ex. B at 5).

The court then conducted a plea colloquy with Petitioner, who had been placed under oath, which included the following:

> THE COURT:  . . . And I'm going to go over all of this with you [Petitioner].  Although you've now heard this, you probably will hear it twice.
>
> At any rate, it's not a recommendation because normally these come to me and say he will get "X" number of years.  You're going to plead straight up to the Court.  And I think counsel just outlined accurately what the parameters are.  You understand that?
>
> THE DEFENDANT:  Yes, Your Honor.
> . . . .
> THE COURT:  . . . And you understand, again, all the parameters of what you're facing, potentially, in this case?
>
> THE DEFENDANT:  Yes, Your Honor.

(Ex. B at 5–9).

The record additionally includes the written plea agreement signed by Petitioner (Ex. B). Immediately above Petitioner's signature is an acknowledgment which states that by signing the agreement, Petitioner agreed, in relevant part that;  (1) he read and understood the contents of the document; (2) he was satisfied with his counsel's advice; and (3) his counsel had not compelled or induced him to enter into the agreement by any promises (*id.*).  The written agreement expressly states that the mandatory sentence the court was required to impose was "25–Life" on each count (*id.*).

Petitioner's allegation that he was promised a sentence of only twenty-five (25) years is flatly contradicted by the transcript of the plea colloquy and the written plea agreement he signed.  It was made clear to Petitioner, both in the written agreement and at the plea hearing, that twenty-five (25) years was the <u>minimum</u> sentence he could receive on each count, but the court had discretion to impose a life sentence on each count.  In light of this record, Petitioner failed to demonstrate that the state court's adjudication of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.

  B. <u>Ground Two: "Counsel was ineffective for erroneously advising [] Defendant that he did not have a defense of self-defense."</u>

Petitioner asserts he asked defense counsel to investigate a defense of self-defense, but counsel advised him the defense was not viable (doc. 1 at 5, supporting memorandum at 8–19). Petitioner asserts his recorded interview with police included his statements that he overheard the victims in the next room state they were going to get money from him and physically harm or kill him (supporting memorandum at 11–17).  He also told police he believed the victims had a gun (*id.* at 16).  Petitioner asserts he was unable to retreat, because he did not have a vehicle, and he was under the impression that if he left the house, the victims would reveal his drug problem to his family (*id.*).  Petitioner asserts Dr. James Larson, a licensed psychologist who performed a psychological evaluation before sentencing, would have testified in support of self-defense (*id.* at 16–17). He states Dr. Larson testified at his sentencing hearing that Petitioner told him he believed that the victims were planning to physically harm or kill him (*id.*).  Petitioner contends his statements to police and Dr. Larson were sufficient to establish a prima facie defense of self-defense (*id.* at 9, 17).  He contends had counsel not advised him that he did not have a viable defense, he

would not have pleaded guilty and would have gone to trial (*id.*). Petitioner states he raised this claim in his Rule 3.850 motion (doc. 1 at 5).

Respondent contends Petitioner failed to demonstrate that the state court's adjudication of this claim was contrary to or an unreasonable application of clearly established federal law (doc. 13 at 8–10).

       1.      Clearly Established Federal Law

The clearly established federal standard applicable to this claim is set forth *supra*.

       2.      Federal Review of State Court Decision

Petitioner raised this claim as Ground Two in his Rule 3.850 motion (Ex. H at 7, 18–27). The state circuit court adjudicated the claim as follows:

> In order to be entitled to collateral relief from his conviction on the ground that his trial attorney performed ineffectively, the Defendant must demonstrate both that counsel performed deficiently and that the deficient performance prejudiced the defense. To state a facially sufficient claim of prejudice, a defendant seeking to withdraw his plea on grounds of counsel's ineffectiveness must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty [or no contest] and would have insisted on going to trial. Ward v. State, 984 So. 2d 650 (Fla. 1st DCA 2008) (citations omitted).
>
> The Defendant claims that his counsel was ineffective for advising the Defendant that he had no viable claim of self-defense. The court cannot agree. Based on the facts of this case, counsel did not perform deficiently by advising the Defendant that the defense of self-defense was not applicable.
>
> According to the Defendant's own motion, when asked by the police why he didn't leave, he stated, "Yes, the point is if I leave they will call my family or whatever . . ." Specifically, the Defendant alleges in his motion that he was "under the impression that if he left then the victims would call his family and reveal the Defendant's drug problem." Clearly, to the extent the Defendant contends that deadly force was justified to prevent the disclosure of his substance abuse problem, such a claim is entirely without merit and frivolous. Indeed, the law pertaining to self-defense provides that a person is justified in the use of deadly force and does not have a duty to retreat if he or she *reasonably* believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony. Cromartie v. State, 1 So. 3d 340 (Fla. 1st DCA 2009) (emphasis added).

At the sentencing hearing, an expert witness [Dr. James Larson], who testified that he had reviewed all discovery materials in this case,[FN 1] opined that at the time the crimes were committed, the Defendant was under a drug induced, "delusional perception" that "his own life was at risk." <u>Attachment 3</u>, at 15. The expert witness continued:

> And on the spur of the moment he described how he burst into a room where they were. He thought he had heard that they were plotting against him, to harm him or kill him and opened fire.

Subsequently, trial counsel asked the expert witness, "*in reviewing the discovery materials you're aware that there was no indication that the victims in this case were plotting against Mr. Nguyen or had any weapons?*" The expert witness responded, "Yes, that was very important in terms of my diagnosis." <u>Attachment 3</u>, at 15. (Emphasis added).

On cross-examination, the following exchange took place on the record between the prosecuting attorney and the expert witness:

> Q. Now, you—your report reflects that [the Defendant] believed he was about to [be] harmed or killed by the alleged victims. Were you also aware that during this time that he was at this house he had ample time to leave?
>
> A. Yes.
>
> Q. And he chose not to?
>
> A. Yes.
>
> Q. And at the time—were you aware that at the time these victims were shot they were in another room with the door shut?
>
> A. Yes.
>
> Q. And he actually kicked in the door and fired 12 rounds?
>
> A. I'm aware of that.

<u>Attachment 3</u>, at 22.

>    Accordingly, although there is evidence in the record to suggest that the Defendant may have possessed a delusional belief that he [sic] life was at risk, such a delusional belief would not have supported a viable claim of self defense. As the court previously explained, only a *reasonable* belief that deadly force is necessary will support a claim of self- defense. Defendant's trial counsel openly indicated that the discovery materials contained no indication that the victims in this case were plotting against Mr. Nguyen or that they possessed any weapons. The only "evidence" suggesting a plot against the Defendant was Defendant's own perception of such a plot, and this perception was classified by the Defendant's own expert witness as "delusional." To present a claim of self defense based on nothing more than the Defendant's delusional perception that his life was at risk would be frivolous.
>
>    Furthermore, the Defendant's own statement reflects that his delusional perception that his life was at risk was based on nothing more than alleged statements that Defendant claims to have overheard the victims utter while the victims were in another room.
>
>    The First District Court of Appeal has held that, "[w]hen considering the matter of threats in relation to proof of self-defense, there must be some evidence of an overt act expressing an intention to immediately execute the threats so that the person threatened has a reasonable belief that he will lose his life or suffer serious bodily harm if he does not immediately take the life of his adversary." Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981); see also, State v. Coles, 91 So. 2d 200 (Fla. 1956). In the Defendant's statement to the police, he recounts statements he allegedly heard the victims make in the other room. In response to those alleged statements, and apparently a perceived creak in the floor, the record shows that the Defendant kicked in the door to the room where the victims were located and opened fire. Such alleged statements, even considering the perceived creak in the floor, would not satisfy the requirements of well established legal precedents concerning the defense of self-defense so as to justify the Defendant's actions.
>
>    Furthermore, the Defendant's perception that his life was in danger has been classified by a licensed psychologist as "delusional." Therefore, Defendant's actions cannot be considered reasonable and Defendant's counsel cannot be considered ineffective for advising the Defendant that he did not have a viable claim of self-defense.
>
>    [FN 1: reference to sentencing transcript]

(Ex. H at 31–35).

The state court's findings with regard to Dr. Larson's testimony at the sentencing hearing are well supported by the record. Dr. Larson testified that upon his review of discovery materials (Petitioner's statements to police and the 911 operator, witness statements, and police reports, ) and his conducting several psychological tests on Petitioner and interviews with Petitioner and his brother, Petitioner was suffering a drug-induced psychosis when he shot the victims (Ex. C at 4–25). Dr. Larson testified Petitioner had a delusional perception that his life was at risk (*id.* at 15–16, 19–22).

The state court determined the evidence relied upon by Petitioner in support of self-defense, that is, Dr. Larson's testimony and Petitioner's statements that he believed his life was at risk, did not satisfy the elements of self defense under Florida law, because it did not suggest Petitioner had a <u>reasonable</u> belief that deadly force was necessary. The court additionally determined there was no evidence suggesting Petitioner attempted to retreat; indeed, Dr. Larson testified the evidence suggested Petitioner had ample opportunity to leave the house but chose not to.

A determination of whether certain evidence satisfies Florida's legal standard for asserting a defense of self-defense is solely within the province of the Florida courts. "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); <u>Mullaney v. Wilbur</u>, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983). Therefore, this federal court must abide by the state court's determination that there was insufficient evidence to support self-defense under Florida law. In light of this determination, Petitioner failed to show that counsel performed deficiently by advising him that self-defense was not a viable defense. Furthermore, to the extent Petitioner contends counsel was deficient for failing to investigate the defense, he failed to show that further investigation would have resulted in the discovery of evidence that would have supported self-defense. Therefore, Petitioner failed to demonstrate that the state court's adjudication of this claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u>.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 1) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 7th day of May 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**